614 A.2d 582

**Theodore J. SCHEVE et ux.**

v.

**SHUDDER, INC. et al.**

**Theodore J. SCHEVE et ux.**

v.

**BAMA, INC. et al.**

**No. 13, Sept. Term, 1992.**

Court of Appeals of Maryland.

Oct. 28, 1992.

Motion for Reconsideration Denied Nov. 27, 1992.

364

Paul E. Rosenberg, Camp Springs, for appellants.

Susanne Koster Henley, Annapolis, for appellees.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

CHASANOW, Judge.

The issue in the instant case is whether the court may issue a final decree foreclosing a landowner's right of

redemption and vesting title in a tax sale purchaser, under Maryland Code (1986, 1992 Cum.Supp.), Tax–Property Article, § 14–844,[1] where the tax sale purchaser has filed suit to foreclose the right of redemption and taken all necessary steps to perfect the foreclosure of the right of redemption, but thereafter changed its mind.

## I.

On June 2, 1987, the Anne Arundel County tax collector held a public tax sale and sold ten properties located within the county, nine of the properties belonging to the defendant Bama, Inc. and one to the defendant Shudder, Inc. (collectively "the defendants"). At this tax sale, the plaintiffs, Theodore and Geraldine Scheve (the Scheves), were the highest bidders on the defendants' properties.[2] The Scheves paid the outstanding tax on the properties, and the county tax collector issued them certificates of tax sale for each of the ten parcels.[3]

The Scheves filed a complaint to foreclose Shudder's right of redemption on March 31, 1988. The Scheves filed two requests for the service of process and for orders of publication in the Shudder case, the first with the complaint and, after a series of miscommunications with the circuit court clerk's office, again on November 14, 1988. After correcting the problem, the court issued the required process and published a notice of foreclosure. Both the notice and summons provided that the property should be redeemed by February 9, 1989, or a final judgment would be entered foreclosing Shudder's rights of redemption.

---

**1.** Hereinafter all statutory references are made to Maryland Code (1986, 1992 Cum.Supp.), Tax–Property Article.

**2.** The total price bid for the nine parcels owned by Bama was $849,000. The Scheves also bid $30,000 on the property that Shudder owned.

**3.** At that time, Bama owed the county $9,231.23 in property taxes on its nine parcels and Shudder owed $348.05.

On February 2, 1989, the Scheves also filed a complaint to foreclose Bama's right of redemption. Under the terms of the summons and the published notice, the property should be redeemed by April 19, 1989, or a final judgment would be entered foreclosing Bama's rights of redemption.

With both the Shudder and Bama complaints, the Scheves attached the tax sale certificates, affidavits of title search, requests to order publication of notice of sale, and requests to serve summons on the named defendants. In each case, the defendants received personal service of process, as well as published notice before any judicial action occurred. Neither Bama nor Shudder filed answers to the complaints or sought to prevent foreclosure.

In November 1990, the defendants Shudder and Bama submitted to the circuit court proposed orders that would foreclose their rights of redemption. The circuit court signed the orders on December 11, 1990, and foreclosed the defendants' rights of redemption.[4] Immediately thereafter, the Scheves filed a motion to strike the order foreclosing redemption. The Scheves' motion was based on the grounds "that the Plaintiffs have not sought a Final Order Foreclosing Rights of Redemption[, and that] the Order appears to have been passed by the Court *sua sponte* without communication to Plaintiffs or their attorney." On January 3, 1991, the judge granted the Scheves' motion to strike the order and revived the defendants' rights of redemption. After the court did so, however, the Scheves did not attempt to dismiss their complaint.

The defendants filed a Motion for Judgment on June 24, 1991, and requested that the circuit court foreclose their rights of redemption and authorize the collector of taxes to convey to the Scheves an indefeasible fee simple title to the property. Almost three years after filing their complaint to

---

4. We will hereafter address these two matters as one case. The defendants were represented by the same counsel, all the relevant documents and court orders were identical, and the two cases were combined at a later hearing.

foreclose the right of redemption, the Scheves apparently decided that they had overbid the property. In response to the defendants' motion and their anticipation of potential financial loss, the Scheves filed a motion stating that they were "not interested in pursuing their Complaint to Foreclose the Equity of Redemption and request that it be dismissed...."

A hearing was held September 16, 1991, to decide the defendants' Motion for Judgment. At the hearing, the defendants argued that, once a purchaser at a tax foreclosure sale files a complaint and takes all steps necessary to foreclose the right of redemption, the court must enter a judgment foreclosing the prior owner's right of redemption after the time period set in the order of publication and the summonses expire. For this proposition the defendants relied on § 14–844(a), which provides:

"**§ 14–844. Final order.**

(a) *Judgment.*—After the time limit set in the order of publication and in the summons expires, the court shall enter judgment foreclosing the right of redemption. An interlocutory order is not necessary. The judgment is final and conclusive on the defendants, their heirs, devisees, and personal representatives and they or any of their heirs, devisees, executors, administrators, assigns, or successors in right, title, or interest, and all defendants are bound by the judgment as if they had been named in the proceedings and personally served with process."

The Scheves in turn sought to dismiss their complaint and argued that after filing the complaint the statute "doesn't intend for a final decree unless the Plaintiff moves for it, and there is no authority to compel him to take [the property]." The Scheves also argued that the circuit court could not foreclose the right of redemption because there had been no compliance with the literal terms of the notice provisions in § 14–839, since the Scheves failed to file an affidavit of service of process.

The circuit court rejected the Scheves' arguments and held that "once the Order of Publication and summons

requirements have been complied with, the court shall enter a judgement foreclosing the equity of redemption[, and a] specific request by the tax purchaser is not necessary." Noting that the purpose of the statute was to improve the marketability of property sold at tax sales, the court reasoned that "[t]he purpose of § 14–808 et seq. would be defeated if the purchaser at a tax sale were allowed to file a Complaint to Foreclose the Equity of Redemption, comply with all the statutory notice and publication requirements, allow the time in the Summons and Order of Publication to pass and only then delay the entering of a Final Order by withholding from the Court a copy of a Final Order." The circuit court then entered the final order foreclosing the defendants' rights of redemption. The Scheves appealed to the Court of Special Appeals, and we granted certiorari before the intermediate appellate court heard the case.

## II.

Title 14 of the Tax–Property article provides county governments a means of collecting property taxes that are in arrears. In *Simms v. Scheve*, 298 Md. 1, 467 A.2d 499 (1983), we noted that, under the tax sale statute, "for a tax sale to be effective substantial compliance with the statute is required[; i]n this regard, the prescription of the statute is clear and simple." We then described the basic steps of the tax sale process. We said that under the tax sale statute

"[u]npaid taxes on real estate constitute a lien on that property. [§ 14–804]. Generally, within two years from the date taxes become in arrears the jurisdiction's collector must sell the land. [§ 14–808]. Notice of the proposed sale must be given to the owner at least thirty days before the property is advertised for sale and the owner is notified that if he does not pay the taxes within thirty days, the property will be sold. [§ 14–812]. After the sale is properly advertised, the property is sold at public auction. [§ 14–817].

The purchaser of the property is given a certificate of sale which includes a description of the property, the amount for which the property was sold, and information as to the time in which an action to foreclose the owner's right of redemption must be brought. [§ 14–820]. The owner may redeem the property at any time until the right of redemption has been finally foreclosed by paying the required sum to the collector, who transfers the money to the purchaser in exchange for the tax sale certificate. [§§ 14–827 to 14–828].

Sections [14–832.1 to 14–848] define the purchaser's ability to foreclose the right of redemption. These provisions are to be 'liberally construed as remedial legislation to encourage the foreclosure of rights of redemption by suits in the [circuit] courts and for decreeing of marketable titles to property sold by the collector.' [§ 14–832]. The holder of the certificate of sale may file [a complaint] to foreclose the owner's right of redemption after [six months] from the date of the sale.... The [complaint] must be filed within two years or the certificate is void. The owner may redeem the property at any time until the right of redemption has been finally foreclosed. [§ 14–833].

The purchaser initiates the foreclosure proceeding in the [circuit] court by filing a [complaint as detailed in § 14–835] and attaching the certificate of sale issued by the collector...."

*Simms*, 298 Md. at 3–4, 467 A.2d at 500 (citations omitted).

The tax sale statute sets out several steps that must be complied with before a circuit court may enter a final order under § 14–844. In summary, the statute requires that: (1) the purchaser must file a complaint that conforms with § 14–835(a) within two years following the sale; (2) the purchaser must attach the certificate of sale (§ 14–835(b)); (3) the purchaser must attach an affidavit of title search (§ 14–838); (4) the court must issue process and public notice under §§ 14–839 and 14–840, setting out the time after which the right of redemption will be foreclosed.

Thereafter, assuming that due process requirements have been met, the circuit court may enter a final order under § 14–844.

## III.

On appeal, the Scheves object to the circuit court's entry of an order foreclosing the defendant's rights of redemption and seek both to reverse the circuit court's order and to dismiss their complaint. The Scheves allege that the circuit court erred in (1) its construction of Title 14 of the Tax–Property Article; (2) its denial of the Scheves' motion to dismiss; and (3) its entering a final judgment foreclosing the defendants' rights of redemption before the Scheves fully complied with the notice provisions in § 14–839.

### A.

The parties focus their arguments on the construction of § 14–844. The relevant portion of § 14–844 provides:

"(a) *Judgment.*—After the time limit set in the order of publication and in the summons expires, the court shall enter judgment foreclosing the right of redemption...."

The Scheves contend that § 14–844(a) does not permit a circuit court to enter an order foreclosing the right of redemption against "an unwilling plaintiff." They argue that the filing of a complaint and complying with the procedural statutes is insufficient and that a tax sale purchaser must take additional steps to affirm its desire to foreclose. The defendants simply respond that the language of § 14–844 is mandatory, and that once the suit is filed and the statutory procedures are complied with the circuit court must enter an order to foreclose the right of redemption after the expiration of the dates in both the published notice and summonses.

In construing a legislative enactment the fundamental judicial task is to determine and effectuate the legislature's intent, and indeed the very language of the statute serves as the primary source of the legislature's

intent. *See, e.g., Revis v. Maryland Auto. Ins. Fund,* 322 Md. 683, 686, 589 A.2d 483, 484 (1991); *Privette v. State,* 320 Md. 738, 744, 580 A.2d 188, 191 (1990). To accomplish this task "the words of the statute are to be given their ordinary and natural import.…" *Revis,* 322 Md. at 686, 589 A.2d at 484. In addition, the language of the statute must be considered along with the statute's stated policy that its provisions "shall be liberally construed as remedial legislation to encourage the foreclosure of rights of redemption … and for the decreeing of marketable titles to property sold by the collector." § 14–832.

Under these principles of statutory construction and the plain language of the statute, the Scheves' first contention must fail. The Scheves argue that a tax sale purchaser's filing of a complaint under § 14–833 is an insufficient basis for a circuit court to grant the relief that the complaint requests. Instead, the Scheves reason, the complaint only serves to preserve the validity of the certificate, and the court must wait until the tax sale purchaser signals the court that it is "truly" interested in receiving the relief requested in the complaint. The Scheves base this interpretation on policy arguments aimed at protecting the tax sale purchaser from hidden risks that may not surface until after a title search is performed or that may surface after the tax sale purchaser files the complaint. Such defects, the Scheves assert, include the risk that the purchaser may have overbid the property, the existence of federal tax liens, pending bankruptcy proceedings, and destruction of an improvement on the property due to fire or other unforeseen event. According to the Scheves, requiring the reaffirmation of the tax sale purchasers' desire to foreclose protects purchasers from these risks, thus maintaining the viability of the tax sale process. Without such protection, they argue, potential purchasers would be unwilling to purchase property at tax sales.

The Scheves' suggested interpretation, however, simply does not conform with the statute's language or the policies that the statute embodies. To begin with, § 14–833

provides that the purchaser initiates the foreclosure process by filing a complaint. The statute then sets out that the complaint must contain "a *request* that the court pass a judgment that forecloses all rights of redemption of the defendants and any other person having any interest in the property." § 14–835(a)(6) (emphasis added). In addition to the statutory definition, the common definition of "complaint" encompasses a demand or request for judgment granting the relief that the plaintiff is seeking. *See* Md. Rule 2–305; *Black's Law Dictionary* 285 (6th ed. 1990). Thus, under the statute the complaint is a request that the court take action, not just a mere reservation of rights used to toll the statutory time period in which foreclosure must be sought.

In addition, our prior interpretation of the tax sale statute also indicates that no additional steps are required to enter a final judgment under § 14–844 beyond those set out in the text of the tax sale statute. For instance, in *Simms v. Scheve*, 298 Md. 1, 467 A.2d 499 (1983), we rejected a contention that a court must enter a decree *pro confesso* before foreclosing the owner's right of redemption. The Court based the analysis in *Simms* upon the premise that the tax sale statute outlined "a *complete, clear, and logical procedure* for foreclosing [the right of redemption]." *Id.* at 8, 467 A.2d at 502 (emphasis added). Noting the language of Art. 81, § 112, the predecessor of § 14–844, we rejected the defendant's argument that the statute required an additional step not present in its text. We concluded that the tax sale statute "specifically provide[d] that the final decree be entered after the time stated in the subpoena; it did not mention the delay that would be caused by the decree *pro confesso* procedure." *Id.* at 10, 467 A.2d at 503.

The logic of *Simms* is just as applicable here. The literal terms that the legislature used in § 14–844 do not encompass the Scheves' suggested "second step." A complaint under Title 14 must include the certificate of tax sale, an affidavit of a title search, and requests to serve process and for the court to issue an order of publication. §§ 14–835(b),

14–838, and 14–835(a)(4)–(5). After the purchaser files the complaint and meets all the tax sale statute's requirements, § 14–844 provides that when the prerequisite time period expires, a time period set into motion only through filing the complaint, a judgment will be entered. There is no mention of an additional prerequisite step of reaffirming the tax sale purchaser's desire to proceed.

Under Title 14, once all the necessary steps have been taken, the purchaser's filing of a complaint will authorize the court to foreclose of the right of redemption. To add the additional requirement of a specific request for further judicial action before a circuit court may enter a final order would contradict both the statutory language and scheme. Section 14–833 provides the tax sale purchaser a two-year period to decide if its bid would be a good investment. If it is, the purchaser may then file a complaint to foreclose the right of redemption. Before filing the suit, if the investment fails to meet the purchaser's expectations, the tax sale purchaser may walk away from its bid with only the forfeiture of its payment of the back taxes. § 14–833(d). Either way, the decision to file a complaint and to proceed remains with the tax sale purchaser. The two-year filing deadline under the statute provides an adequate period of time in which the purchaser can assess and discover risks of completing the transaction.

At a minimum, we hold that, unless the complaint is dismissed under Md.Rules 2–506 or 2–507, § 14–844 gives a circuit court authority to enter a final order foreclosing the owner's right of redemption once the plaintiff has accomplished all the prerequisite steps required by the tax sale statute. Permitting a circuit court to enter a final order under § 14–844 after the time period set forth in the purchaser's notice to the owner is true to both the statutory language and the policy of encouraging the foreclosure of redemptive rights at tax sales. To require an additional demand by the tax sale purchaser would condone the extension of the tax sale process almost indefinitely, so long as the complaint is timely filed, unless the court dismisses the

action under its own motion or the motion of an interested party. *See* Md.Rule 2–506; Md.Rule 2–507(c).[5] Tax sale purchasers must be serious when filing their complaints and initiating the judicial process. When tax sale purchasers file their complaints, they signal the court of their willingness to proceed.

## B.

The Scheves' next contention is that the circuit court could not enter a final judgment since they did not comply with the notice provisions of § 14–839; specifically, the Scheves point to their own failure to file an affidavit certifying the method and time of service. § 14–839(a)(5). Thus, they argue, all the prerequisites under the statute were not met and the circuit court was without jurisdiction. We disagree. Our prior case law indicates that the requirement of filing an affidavit of service of process is not a jurisdictional requirement where there are no allegations that the owners lacked notice of the foreclosure proceedings. *See Hauver v. Dorsey*, 228 Md. 499, 503–04, 180 A.2d 475, 478 (1962).

The Scheves' contention has no merit. The defendants here have all been personally served with process and have submitted to the court's jurisdiction in these proceedings by filing motions for judgment. In addition, the Scheves are not the proper party to raise issues concerning the notice provisions. The Legislature intended property owners, not

---

5. Indeed, the period in which the purchaser's right to foreclose the right of redemption can potentially be quite extensive. For instance, in *Prince George's Homes v. Cahn*, 283 Md. 76, 389 A.2d 853 (1978), we found that a tax sale purchaser who had timely filed to foreclose the owner's right of redemption but who did not seek to conclude the procedure until nine years later was still entitled to receive a final decree foreclosing the owner's redemptive rights. In *Cahn* we recognized that although the county tax collector could seek to dismiss the tax sale purchaser's complaint for failure to prosecute, until the complaint was actually dismissed the tax sale purchaser was still entitled to receive a final order and the county could not resell the property. *Id.* at 83, 389 A.2d at 856.

tax sale purchasers, to be the beneficiaries of the tax sale notice provisions and enacted these provisions to provide greater due process protection for them. *See St. George Church v. Aggarwal,* 326 Md. 90, 96, 603 A.2d 484, 487 (1992).

### C.

 The Scheves finally assert the circuit court erred in not permitting them to voluntarily dismiss their complaint to foreclose prior to entering the final decree under § 14–844. The Scheves contend that they were "unwilling plaintiffs" and allege that once a plaintiff in a tax sale foreclosure decides to voluntarily dismiss a case a court cannot compel a plaintiff to go forward. The Scheves broadly assert that "[t]here is no provision under the law or under the Rules of Procedure requiring any Plaintiff, civil or criminal, to proceed with a cause of action against its will." The Scheves' contentions, however, misconstrue Maryland Rule 2–506.

We do not agree with the Scheves' assertions that tax sale purchasers possess a unilateral right to dismiss a complaint at any time. This argument is far too broad. Although Title 14 creates a distinct statutory process for foreclosing a property owner's right of redemption after a tax sale, Maryland's Rules of Civil Procedure still must be followed. Under these Rules, neither tax sale purchasers nor plaintiffs in general possess an unqualified right to dismiss their suits. With tax sale foreclosure actions, as with all causes of actions, at some point in the litigation a circuit court may deny a plaintiff's request to dismiss its complaint. Maryland Rule 2–506 establishes that point. Under the heading of "Voluntary Dismissal," it provides:

"**(a) By Notice of Dismissal or Stipulation.**—Except as otherwise provided in these rules or by statute, a plaintiff may dismiss an action without leave of court (1) by filing a notice of dismissal at *any time before the adverse party files an answer or a motion for sum-*

*mary judgment* or (2) by filing a stipulation of dismissal signed by all parties who have appeared in the action." Under the plain language of Rule 2–506, the plaintiff loses the absolute right to voluntarily dismiss an action after an adverse party files an answer or motion for summary judgment. The tax sale statute does not alter the operation of Rule 2–506(a).

We note that the need of tax sale purchasers to obtain leave of court before dismissing their complaints is not new. In fact, the requirement was once far stricter. Before the merger of the courts of law and equity in Maryland, an action to foreclose the right of redemption was a proceeding in equity. *See Dampman v. Litzau & Sonntag,* 261 Md. 196, 202, 274 A.2d 347, 350 (1971) (foreclosure of right of redemption is a statutory equity proceeding); *Voge v. Olin,* 69 Md.App. 508, 513, 518 A.2d 474, 476 (1986) (stating same); *see also* Md.Code (1957, 1975 Repl.Vol.), Art. 81, § 112 ("the court shall pass its decree in the proceedings, in accordance with the general equity jurisdiction and practice of the court...."). Old Md. Rule 582, titled "Voluntary Dismissal—Equity" embodied the common law rule that a party requires leave of the court before dismissing an equitable action, regardless of whether the adverse party has filed an answer or a motion for summary judgment. Md.Rule 582 (1984). It stated in relevant part that "[a] party may dismiss his action ... only with leave of court." Thus, contrary to the Scheves' assertions, prior procedural rules placed even greater limits on a plaintiff's right to dismiss a tax sale proceeding than exist under present Md.Rule 2–506.

The Scheves did not request to dismiss their complaint until after Anne Arundel County filed answers to the suits,[6] and after the defendants filed Motions for Judgment. The

---

6. Anne Arundel County filed simple answers in both cases. The answers stated, "[t]hat the Defendant, Anne Arundel County, Maryland, has no interest in the outcome of this case except that all taxes, interest and penalties relating thereto, relating to each of the subject properties ... should be fully paid...."

defendants' Motions for Judgment were the equivalent of motions for summary judgment, as they did not raise an issue of material fact and sought relief as a matter of law. *See* Md.Rule 2–501(a) and (e). Accordingly, we find that the Scheves no longer had the ability to unilaterally dismiss their complaint. Instead, the Scheves needed leave of the court to do so, permission which was within the circuit court's discretion to withhold under Rule 2–506.

Thus the circuit court had authority, unless it dismissed the action under Rule 2–506, to enter a final order foreclosing redemptive rights since the Scheves' had filed a complaint and complied with the necessary requirements of the tax sale statute. Under Rule 2–506, the trial court has the discretion to grant or deny a plaintiff's motion to dismiss made after an answer or motion for summary judgment has been filed.

The circuit court, in interpreting the tax sale statute, ruled "once the Order of Publication and summons requirements have been complied with, the court *shall* enter a judgment foreclosing the equity of redemption." In light of our holding and the circuit court's apparent belief that it lacked discretion to dismiss the action based on the tax sale statute, we believe the appropriate disposition of this case is to order a limited remand to the Circuit Court for Anne Arundel County. The circuit court may then exercise its discretion under Rule 2–506 and determine whether to grant or deny the Scheves' motion to dismiss. If the circuit court grants the motion to dismiss, it should strike the judgment foreclosing the right of redemption. Otherwise, the judgment will remain in effect.

CASE REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY PURSUANT TO RULE 8–604(d)(1) WITHOUT AFFIRMANCE OR REVERSAL AND FOR FURTHER PROCEEDINGS CONSISTENT WITH THE OPINION OF THIS COURT. THE PETITIONERS, THEODORE J. SCHEVE AND GERALDINE E. SCHEVE, AND THE RESPONDENTS, SHUDDER, INC. AND

BAMA, INC., SHALL BEAR THEIR OWN COSTS IN THIS COURT.